OPINION *Page 2 
{¶ 1} On November 6, 2007, the Stark County Grand Jury indicted appellant, Ricardo Stinnett, on two counts of felonious assault with firearm specifications and/or two counts of aiding and abetting felonious assault with firearm specifications in violation of R.C. 2903.11 and R.C. 2941.146, and one count of domestic violence in violation of R.C. 2919.25. Said charges arose from a drive-by shooting incident wherein Christina Carlton, also known as "Twin," was shot while standing outside her place of employment, a nightclub called "The Spot." Appellant is the father of Ms. Carlton's eight month old child. The additional felonious assault charge pertained to a physical altercation between appellant and a bouncer at the nightclub, Dustin Kindell, which had occurred prior to the shooting. Mr. Kindell helped to remove appellant from the nightclub after appellant had struck another employee, Andrea Haren, causing her injuries. Appellant is the father of Ms. Haren's four month old child. The domestic violence charge pertained to the altercation with Ms. Haren.
 {¶ 2} On December 4, 2007, appellant filed a notice of alibi. A jury trial commenced on December 18, 2007. The jury found appellant guilty as charged. By judgment entry filed January 11, 2008, the trial court sentenced appellant to an aggregate term of fifteen years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED BY ADMITTING PHYSICAL EVIDENCE THAT WAS NOT PROPERLY AUTHENTICATED." *Page 3 
 II {¶ 5} "THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 III {¶ 6} "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION."
 IV {¶ 7} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I, II {¶ 8} Appellant claims the trial court erred in admitting into evidence the bullet fragment taken from the victim's body as there was a failure to properly authenticate the fragment via a proper chain of custody. Appellant further claims his trial counsel was deficient in not objecting to its admission. We disagree with both arguments.
 {¶ 9} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 10} For the ineffective assistance of counsel claim, the issue must be measured against the standard set out in State v. Bradley (1989),42 Ohio St.3d 136, *Page 4 
paragraphs two and three of the syllabus, certiorari denied (1990),497 U.S. 1011. Appellant must establish the following:
 {¶ 11} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 12} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 13} Appellant argues the state did not comply with Evid. R. 901, authentication or identification. State's Exhibit 10 was identified by Michael Short, a criminalist with the Canton-Stark County Crime Lab, as a bullet fragment labeled "Carlton, Christina." Vol. II T. at 155. The bullet fragment was consistent with being fired from the bullet casings found at the scene. Id. at 157-158. There was no further identification of the bullet fragment/casings to any particular firearm or to appellant.
 {¶ 14} The undisputed evidence established Christina Carlton was shot, suffered a bullet wound, and the bullet was surgically removed. Id. at 35, 203. In fact, defense counsel admitted during opening statement that Ms. Carlton had been shot. Id. at 18. Appellant's defense was that he did not shoot Ms. Carlton because at the time of the incident, he was asleep at his cousin's house. *Page 5 
 {¶ 15} The admission of the bullet fragment did not prove a fact that was not already unrefuted by the evidence and appellant. Because it was undisputed that Ms. Carlton had been shot, the error in not authenticating the bullet fragment through a chain of custody was harmless error. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim. R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.
 {¶ 16} Further, under the second prong of Bradley, supra, it cannot be established that the failure to authenticate the bullet fragment affected the outcome of the trial. The bullet fragment evidence was mere "window dressing" to the case.
 {¶ 17} Assignments of Error I and II are denied.
 III {¶ 18} Appellant claims the trial court erred in permitting the state to use a peremptory challenge to Juror No. 163 as the state failed to provide a racially neutral reason for the challenge. We disagree.
 {¶ 19} A defendant in a criminal trial has the "right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." Batson v. Kentucky (1986), 476 U.S. 79, 85-86. The use of a peremptory challenge by a prosecutor is subject to analysis under the Equal Protection Clause. Id. In Hernandez v. New York (1991),500 U.S. 352, 358-359, the United States Supreme Court followed Batson, stating as follows:
 {¶ 20} "In Batson, we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection *Page 6 
Clause.* * *First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.* * * Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question.* * * Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." (Citations omitted.)
 {¶ 21} As noted by Justice Breyer in his concurrence in Rice v.Collins (2006), 546 U.S. 333, a decision on excluding a juror via a peremptory challenge is multi-faceted. Factors include appearance, demeanor, context, and atmosphere:
 {¶ 22} "The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying Batson." Rice, at 343.
 {¶ 23} During voir dire, the prosecutor asked the jury pool if anyone had a problem with sitting on the case. Juror No. 163, a Canton City middle school teacher, responded as follows:
 {¶ 24} "JUROR #163: May I ask a question?
 {¶ 25} "THE COURT: Sure.
 {¶ 26} "JUROR #163: May I ask the age of the Defendant? *Page 7 
 {¶ 27} "THE COURT: Age?
 {¶ 28} "JUROR #163: Yes.
 {¶ 29} "THE COURT: Mr. Wakser, what's the age of your client?
 {¶ 30} "MR. WAKSER: Twenty-eight.
 {¶ 31} "THE COURT: Do you think you've taught him before?
 {¶ 32} "JUROR #163: I was — I mean, I was looking at him. I haven't taught him; that was too long ago, but I was concerned about maybe the victims also if they were former students of mine.
 {¶ 33} "THE COURT: Well, she'll go over their names in a few moments —
 {¶ 34} "JUROR #163: Okay." Vol. I T. at 85-86.
 {¶ 35} Juror No. 163 agreed that if she recognized any of the witnesses, she could assess their credibility equally vis-À-vis other witnesses. Id. at 91.
 {¶ 36} When asked if any of the potential jurors had been the victim of a violent crime or knew anyone that had been the victim of a violent crime, Juror No. 163 indicated a good friend's nephew was shot and then died. Id. at 108. Juror No. 163 explained the person responsible was in prison, and she could disregard the experience. Id. at 108-109.
 {¶ 37} When the jurors were asked if any of them worked with crime victims, Juror No. 163 indicated "[k]ind of with my students. A lot of my students have a lot of things going on." Id. at 109. Juror No. 163 also indicated being familiar with the area in which the incident occurred. Id. at 121.
 {¶ 38} When the prosecutor moved to peremptorily challenge Juror No. 163, the following reasons were given: *Page 8 
 {¶ 39} "MS. DAVE: As a preemptory challenge the State is going to move to excuse Juror No. 163. For the record 163 is — appears to be African-American. I'm asking that she be removed not based upon her race but based on several factors: 1) I did ask the question earlier whether anyone had family members or themselves been accused of a crime. Some of the jurors did respond to DUIs. I noticed on her, her sheet that she filled out she — on her sheet she indicated DUI but when I posed that question she did not respond to that.
 {¶ 40} "In addition, she indicated that she's a teacher in Canton City Schools. I know from talking with some — a lot of my witnesses a lot of them attended like Canton City School system so I'm concerned about those issues as well." Id. at 128-129.
 {¶ 41} Defense counsel objected, arguing the prosecutor did not give sufficient cause to permit the challenge. Id. at 129. The trial court concluded the reasons stated were racially neutral:
 {¶ 42} "THE COURT: I may be incorrect, and I don't have my book with me, but it was my belief that under a Batson challenge the defense has the burden to establish that it's not race neutral. I may be incorrect there. I think — I won't say if I'm — either way I find the reasons for the State to — are race neutral and if she doesn't — because her answers were appropriate except for what she did not say and that was, that was one, and then she did say that she taught a lot. There was also a question to her, you know, does anybody counsel kids in trouble and she indicated as a teacher that she did, a lot of the kids have problems.
 {¶ 43} "So the record should also reflect I think it is that Juror 166 is an African-American also so she's not the sole African-American, and I don't believe there's been *Page 9 
any indication of anything other than race neutral reasons and I'll grant it." Id. at 129-130.
 {¶ 44} Upon review, we concur with the trial court's decision that the reasons given were racially neutral, and find no abuse of discretion by the trial court in granting the peremptory challenge.
 {¶ 45} Assignment of Error III is denied.
 IV {¶ 46} Appellant claims his conviction for the felonious assault against Ms. Carlton was not supported by the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 47} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be *Page 10 
exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 48} As against Ms. Carlton, appellant was convicted on one count of felonious assault with a firearm specification and/or aiding and abetting a felonious assault with a firearm specification in violation of R.C. 2903.11(A)(2) and R.C. 2941.146 which state the following:
 {¶ 49} "[R.C. 2903.11(A)(2)] (A) No person shall knowingly do either of the following:
 {¶ 50} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
 {¶ 51} "[R.C. 2941.146] (A) Imposition of a mandatory five-year prison term upon an offender under division (D)(1)(c) of section 2929.14 of the Revised Code for committing a violation of section 2923.161 of the Revised Code or for committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender committed the offense by discharging a firearm from a motor vehicle other than a manufactured home. The specification shall be stated at the end of the body of the indictment, count, or information * * *"
 {¶ 52} Appellant claims the evidence presented on the felonious assault count as to Ms. Carlton was "so slight and of such little probative value that reasonable minds must have reasonable doubts as to the Defendant's guilt." Appellant's Brief at 16. *Page 11 
Therefore, the evidence did not support the conviction, and the jury clearly lost its way. Id. Appellant challenges the victim's credibility because at the time of the shooting, she was intoxicated, and when she identified appellant as the shooter, she was under the influence of pain medication. Vol. II T. at 43-45.
 {¶ 53} Ms. Carlton testified while she was standing outside the nightclub to smoke a cigarette, she saw a "green truck parked in the middle of the street with its lights off." Id. at 30-31. While she was lighting her cigarette, someone from the truck started shooting. Id. at 31. Ms. Carlton was struck in the hip. Id. at 35. She told the investigating officer that her cousin was the driver of the vehicle and appellant was a passenger. Id. at 32-33. Although Ms. Carlton admitted to giving inconsistent testimony at the grand jury, she was consistent in what she had told the police and what she was telling the jury. Id. at 47-49, 57. At the time of the shooting, Andrea Haren, the victim of the domestic violence charge, was standing next to Ms. Carlton. Id. at 117.
 {¶ 54} Following the shooting, appellant called Ms. Haren on her cell phone. Id. at 118, 136. A fellow employee, Tanya Snyder, was standing next to Ms. Haren when the call came in. Id. at 136. Ms. Snyder heard Ms. Haren state, "this is him." Id. When Ms. Haren answered it, Ms. Haren said, "you shot Twin." Id. Ms. Snyder put the call on speaker phone and she heard appellant say, "Bitch, you seen what I'm capable of and you're next, Bitch." Id. at 137. This call was overheard by Canton City Police Sergeant Mike Winn. Id. at 201.
 {¶ 55} While Ms. Carlton was recovering in the hospital, appellant called her and told her at the time of the incident, he was at his cousin's home sleeping. Id. at 33. Thereafter, appellant wrote to Ms. Carlton and told her not to go to court. Id. at 39. Ms. *Page 12 
Carlton identified appellant from a photo array, and identified appellant in court as the shooter. Id. at 37, 39-40.
 {¶ 56} All of this testimony was weighed by the jury against appellant's alibi defense. Appellant's cousin, Lamont Jefferson, testified when he arrived at his home at 11:15 p.m., appellant was there. Id. at 231. They spoke for about 35 to 45 minutes. Id. at 232. Mr. Jefferson went to bed at midnight, and to the "best of his knowledge," appellant did not leave the house at any point during the night. Id. at 234-235. The shooting incident occurred just prior to midnight.
 {¶ 57} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881.
 {¶ 58} Upon review, we find there is present in the record sufficient evidence, if believed, to prove beyond a reasonable doubt that appellant committed the offense of felonious assault and/or aided and abetted another in its commission as against Ms. Carlton, and the jury did not lose its way.
 {¶ 59} Assignment of Error IV is denied. *Page 13 
 {¶ 60} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed. By Farmer, P.J. Edwards, J. and Delaney, J. concur.
 Farmer, P.J. Edwards, J. and Delaney, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1